UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN DARNELL BRYANT,<br><br>    Plaintiff,<br>v.<br><br>SELEAINA ANN THOMAS, Nurse Practitioner; MARTIN LEVIN, CMO; VROOMAN, MTA; SEPULVEDA, Nurse; EDWARDS, Appeals Coordinator; and L.E. SCRIBNER, Warden,<br><br>    Defendants. | Civil No. 09cv1334-WQH-NLS<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FED.R.CIV.P. 12(b)(6)**<br><br>**(2) DIRECTING SERVICE ON DEFENDANT THOMAS**<br><br>[Doc. No. 26] |

I. **INTRODUCTION**

On June 9, 2009, Kevin Darnell Bryant ("Plaintiff"), a prisoner currently incarcerated at Kern Valley State Prison in Delano, California, proceeding *pro se* and *in forma pauperis* ("IFP"), filed a civil rights action pursuant to 42 U.S.C. § 1983, claiming Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment while he was housed at Calipatria State Prison.

Pending before the Court is a Motion to Dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendants Martin Levin, Vrooman, Sepulveda, Edwards and L.E. Scribner ("Defendants"). [Doc. No. 26.] Plaintiff filed his Opposition ("Opp.") on April 12, 2010 [doc. no. 31] to which Defendants have filed their Reply [doc. no. 29].

II. **ALLEGATIONS OF THE COMPLAINT**

On July 21, 2006, shortly after Plaintiff arrived at Calipatria State Prison, he saw a nurse practitioner,

Defendant Seleaina Thomas. [Compl. at 1.] Due to Plaintiff's "documented permanent disability, Plaintiff had been issued permanent disability "chronos" requiring, among other things, that Plaintiff be assigned a lower bunk in lower tier housing. [*Id.*] Thomas did not examine Plaintiff and "refused to honor any of [Plaintiff's] permanent chronos," resulting in Plaintiff being moved to an upper bunk on the upper floor of the prison. [*Id.*]

During the following weeks, Plaintiff fell and hurt himself several times attempting to climb down from the upper bunk. [*Id.* at 2.] Defendants Sepulveda and Vrooman, both nurses, refused to fill out injury incident reports for these accidents. [*Id.*]

On August 21, 2006, Plaintiff wrote a letter to the Chief Medical Examiner, Defendant Levin, regarding Thomas' refusal to honor his chronos. [*Id.* at 3.] On August 23, 2006, Plaintiff also wrote an "emergency request for help and intervention," to the Warden, Defendant Scribner. [*Id.*]

On August 26, 2006, Defendant Vrooman informed Plaintiff that Plaintiff's medical records were locked in Defendant Levin's office over the weekend and were thus inaccessible for the time being. [*Id.*] The next day, on August 27, 2006, Plaintiff was descending the stairs from the upper tier to attend breakfast when his "legs just gave out on [him]" and he "fell head over heels tumbling down those iron, [s]errated stairs landing on my head and back at the bottom." [*Id.* at 2.] Plaintiff was taken by ambulance to the prison medical emergency room where the doctor on call examined him and admitted him into the infirmary. [*Id.*] Plaintiff was put in a neck brace and prescribed pain medication. [*Id.* at 2-3.] Defendant Thomas "refused to renew [Plaintiff's] pain med[ication] several times," told others Plaintiff was faking his injuries, and forced Plaintiff to surrender his neck brace, all without examining him. [*Id.*]

Based on these factual allegations, Plaintiff claims Defendants were deliberately indifferent to his medical needs and thus violated his Eight Amendment right to be free from cruel and unusual punishment.

III. **LEGAL STANDARDS**

A. Fed. R. Civ. P. 12(b)(6) Standard of Review

A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). The plaintiff's complaint must provide a "short and plain statement of the claim showing

that [he] is entitled to relief." *Id.* (citing FED. R. CIV. P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what ... the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (quotation omitted).

A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. ----, 129 S.Ct. 1937, 1949 (2009).

In addition, factual allegations asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Thus, where a plaintiff appears pro se in a civil rights case, the Court must construe the pleadings liberally and afford plaintiff any benefit of the doubt. *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988).

B.     Eighth Amendment Standard

Prison officials violate the Eighth Amendment if they act with deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A plaintiff alleging such a violation must satisfy a two-part test containing both an objective and a subjective component. *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted). A plaintiff must prove that the defendant prison official (1) deprived him of the "minimal civilized measure of life's necessities;" and (2) acted with deliberate indifference by denying, delaying or intentionally interfering with medical treatment. *Id.* (citations omitted). A prisoner's civil rights will only be abridged if "the indifference to his medical needs [is] substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06).

A prison official acts with deliberate indifference only if the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "If a prison official should have been aware of the risk, but was not, then the [official] has not violated the Eighth Amendment, no matter how severe the risk." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quotation omitted). "Deliberate indifference is a high legal standard." *Id.* at 1060. Where a prisoner

alleges delay in receiving medical treatment, he must show that the delay led to further harm. *See Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (citing *Estelle*, 429 U.S. at 106).

### IV. APPLICABILITY OF STANDARDS TO DEFENDANTS' MOTION TO DISMISS

#### A. Judicial Notice

As an initial matter, Plaintiff has asked the Court to take judicial notice of several items in considering Defendants' motion. The first of these is Exhibit "A" which is a memorandum written by the Warden of Kern Valley State Prison to the Custody Staff stating that medical chronos, no matter where issued, must be honored by all staff. [Opp. at 1.] The exhibit is not attached to Plaintiff's Complaint, only to his Opposition, and is thus not part of Plaintiff's pleadings. *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (opposition memoranda do not constitute pleadings under Federal Rule of Civil Procedure 7(a)). As a general rule, when resolving a motion to dismiss for failure to state a claim, the Court may not consider materials outside the pleadings. *Id.* "The focus of any Rule 12(b)(6) dismissal ... is the complaint." *Id.* An exception may be made for documents that are "matters of public record." *See* Fed. R. Evid. 201; *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *overruled on other grounds, Astoria Federal Sav. And Loan Ass'n v. Solimino*, 501 U.S. 104 (1991). However, Plaintiff's exhibit is an internal memorandum and does not fall within the parameter of a public record. Therefore, the Court declines to take judicial notice of Plaintiff's Exhibit "A."

Plaintiff asks the Court to further take judicial notice that he was unable to serve his Complaint on Defendant Thomas due to a change in her employment address and difficulty in obtaining a forwarding address. The Court's docket reflects that the summons for Thomas was returned unexecuted. [Doc. No. 21.] The Court addresses this issue at the conclusion of this Order, separately from the motion to dismiss, as Defendant Thomas is not a party to the motion.

Plaintiff also asks the Court to take judicial notice of the "numerous civil cases that have been filed against defendant Thomas by searching your database" as proof that "defendants Scribner, Edwards and Levin were aware [of her pattern of abuse and] of the serious risk of harm to inmates long before my injuries there and refused to stop her." [Opp. at 6.] Even if the Court were to take judicial notice of lawsuits against Thomas, this information is insufficient for the purpose Plaintiff intends. Filed, but unresolved, lawsuits are mere allegations, not proof, of wrongdoing. Further, each case must be decided on its own facts. As

such, there is no probative value in searching for other cases against Thomas and the Court declines to undertake the task.

### B.     Claim Against Levin

Plaintiff alleges Defendant Martin Levin, Calipatria's chief medical officer, acted with deliberate indifference when he failed to respond to Plaintiff's letter for immediate medical assistance. [Compl. at 3.] Plaintiff wrote to Levin on August 21, 2006, and now claims that because of Levin's lack of response or action regarding the letter, six days later, on August 27, 2006, Plaintiff fell down the second tier stairs of his housing unit and injured himself. [*Id.*] Plaintiff claims he suffered a spinal cord injury. [*Id.*]

A delay in treatment does not constitute a violation of the Eighth Amendment, unless the delay or denial was harmful. *See Shapley*, 766 F.2d at 407; *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) ("[D]elay in providing a prisoner with dental treatment, standing alone, does not constitute an Eighth Amendment violation."). Furthermore, the delay must have "occurred to patients with problems so severe" that prison officials should have known the delay would cause significant harm to the prisoner. *Hallett*, 296 F.3d at 746.

An interim of six days passed between the time of Plaintiff's submission of his letter to Levin and Plaintiff's fall. At the time of his fall from the stairs, Plaintiff's medical records were locked in Levin's office for the weekend, which indicates Levin was investigating Plaintiff's medical needs. Although Plaintiff walked with the support of a cane, he was capable of using the stairs. A copy of Plaintiff's medical record attached to the Complaint reflects that although there was a chrono stating he required lower tier/lower bunk accommodation, the same physician who issued that chrono also noted that Plaintiff was able to walk up a flight of stairs without aids such as crutches. [Compl. Exs., Doc. No. 1-1 at 2-3.] Moreover, although Plaintiff states that he had suffered falls while descending from the upper bunk, he does not say he had difficulty climbing down the stairs. In fact, it is unclear from Plaintiff's Complaint whether his letter to Levin went beyond a request for the facility to honor his medical chrono; he does not state that he informed Levin about the falls from the upper bunk or that he had difficulties descending the stairs. Thus, the Court cannot infer that Plaintiff's problems were known to Levin or that they were so severe that Levin should have known that failing to act within six days of receiving Plaintiff's letter would lead to significant harm. Bearing in mind that "only the unnecessary and wanton infliction of pain implicates the Eighth

Amendment," the Court finds the record and pleadings insufficient to draw the reasonable inference that Levin displayed deliberate indifference to Plaintiff's serious medical needs. *Farmer*, 511 U.S. at 834.

Plaintiff contends that Levin should be liable because "[i]t was his job to correct any and all of the wrong [] decisions defendant Thomas made." [Opp. at 2.] Supervisory personnel are generally not liable under 42 U.S.C. § 1983. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-92 (1978) (Congress did not intend to impose liability vicariously on employers or supervisors solely based on the existence of employer-employee relationship); *see also Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993) (there is no respondeat superior liability under section 1983). Supervisory prison officials may only be held liable for the allegedly unconstitutional violations of a subordinate if Plaintiff sets forth allegations which show: (1) how or to what extent they personally participated in or directed a subordinate's actions, and (2) in either acting or failing to act, they were an actual and proximate cause of the deprivation of Plaintiff's constitutional rights. *See Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Plaintiff does not allege that Levin directed Thomas to disregard Plaintiff's lower tier/lower bunk chrono. Nor does Plaintiff allege facts that show Levin knew about his falls or that his condition could lead to falling down a flight of stairs and wantonly disregarded such danger by failing to act immediately.

Even liberally construed, Plaintiff's Complaint fails to set forth facts which state an individualized constitutional claim against Defendant Levin. Thus, the Court **GRANTS** the Motion to Dismiss with regard to the claim against Levin.

   C. Claim Against Scribner

Plaintiff alleges that the Warden at Calipatria, Defendant Scribner, refused to respond to requests for help and intervention. [Compl. at 3.] Plaintiff alleges he first wrote to Scribner on April 23, 2006 and alleges that due to Scribner's failure to respond to this letter, Plaintiff fell down the stairs four days later. [*Id*.]

As discussed above with respect to the claim against Defendant Levin, there is nothing to suggest Scribner knew he had to act immediately to prevent Plaintiff from incurring serious injury. At most, Scribner would have known that Plaintiff had a chrono that he wanted honored because he was having falls from climbing down from the upper tier of his bunk bed but that he was capable of using the stairs without the use of aids. There is nothing in the record that suggests Scribner would know that Plaintiff's arthritis

was so debilitating that he needed to intervene immediately to prevent substantial harm. Plaintiff has not shown that Scribner knew of and disregarded an excessive risk to his health or safety. *See Farmer*, 511 U.S. at 834.

Following the fall, Plaintiff alleges he received immediate medical care and was admitted to the infirmary. [Compl. at 2.] Plaintiff alleges he wrote to Scribner again on September 12, 2006 and received no response. Plaintiff has failed to articulate how Scribner's delay in personally responding to this letter caused harm to him at this point. *See Shapely*, 766 F.2d at 407 (a claim of deliberate indifference must show delay was harmful). On the contrary, Plaintiff alleges that his complaints were being investigated by Defendant Edwards and as a result of the investigation, Defendant Thomas performed her first physical examination of him. [Compl. at 2.] Moreover, a failure to investigate by a prison official in itself does not violate Plaintiff's constitutional rights because a prison grievance procedure is a procedural right only and does not confer substantive right to inmates. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure).

The Court finds that Plaintiff has not presented facts that would support a claim of deliberate indifference to Plaintiff's medical needs on the part of Defendant Scribner. Thus, the Court **GRANTS** Defendant Scribners' Motion to Dismiss.

### D. Claims Against Vrooman and Sepulveda

Plaintiff alleges medical staff, Vrooman and Sepulveda, were "deliberately indifferent" to his medical needs because they "refused to fill out the injury incident reports" regarding Plaintiff's falls. [Compl. at 2] Plaintiff also alleges Vrooman stated he was unable to retrieve Plaintiff's medical records on August 26, 2006 because they were locked up in Defendant Levin's office for the weekend.[1] [*Id.* at 3.]

The Court cannot reasonably infer that Vrooman's and/or Sepulveda's alleged actions constituted a denial, delay or intentional interference with medical treatment sufficient to constitute a violation of

---

[1] In his Opposition, Plaintiff newly alleges that Vrooman and Sepulveda directly assisted Thomas in cutting off his medication for weeks at a time, lying to him about the medications and taking him off a list of patients to be seen by the doctor. [Opp. at 3 & 5.] The Court will not consider these allegations because "[t]he focus of any Rule 12(b)(6) dismissal ... is the complaint." *Schneider*, 151 F.3d at 1197 n.1. This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to FED. R. CIV. P. 12(b)(6). *Id.* (citations omitted). Liberal construction does not require the Court to consider facts alleged in the Opposition that are not contained in the body of the pleading itself. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Plaintiff's constitutional rights. Plaintiff does not allege that Vrooman and/or Sepulveda refused to medically treat him or that the alleged failure to fill out incident reports had any impact on his medical circumstances.

To the extent that Plaintiff's claim rests on Defendants' failure to follow institutional rules, Plaintiff's claim is more akin to a due process violation. Plaintiff states "MTA Mr. Vrooman and Nurse Ms. Sepulveda were the ones who refused to fill out the injury incident reports" and that the medical staff's "set procedures 'require[d] them to [fill out the injury incident reports].'" [*Id.* at 2.] Even assuming Defendants did violate prison procedures, this cannot be the basis for a civil rights claim because Plaintiff does not have a constitutional right to implementation of prison procedures. *See Ramirez*, 334 F.3d at 860.

Plaintiff's alleged facts do not support an inference of deliberate indifference on the part of Vrooman and/or Sepulveda. Therefore, the Court **GRANTS** Vrooman and Sepulveda's Motion to Dismiss.

### E. Claims Against Edwards

Plaintiff alleges Defendant Edwards was deliberately indifferent because she was the appeals coordinator at Calipatria and failed to respond to his emergency appeals. However, the Complaint alleges that "Ms. Edwards went to question the clinic staff and Ms. Thomas in response to my emergency medical appeals [] I submitted on her [Thomas'] refusal to see me." [Compl. at 2] Plaintiff alleges that the reason he was seen by Defendant Thomas on September 22, 2006 was because of Edwards' questioning of the clinic staff.

The Court finds that Plaintiff has failed to plead facts sufficient to draw the reasonable inference that Defendant Edwards was deliberately indifferent to Plaintiff's medical needs. Therefore, the Court **GRANTS** Edward's Motion to Dismiss.

## V. SERVICE ON DEFENDANT THOMAS

On November 9, 2009, the Court ordered the Clerk of Court to issue a summons upon all Defendants, including Thomas. [Doc. No. 16.] On February 1, 2010, the summons was returned unexecuted as to Thomas. [Doc. No. 21.] In his Opposition, Plaintiff states Thomas no longer works at Calipatria and the litigation coordinator has refused to provide Plaintiff with a forwarding address. Plaintiff asks the Court to order that Defendants release Thomas' forwarding address in order to effectuate service.

Plaintiff's request is inappropriately made in his Opposition to Defendants' Motion to Dismiss.

However, because this Court must construe Plaintiff's pleadings liberally and acknowledges that Plaintiff has made an effort to serve Defendant Thomas, the Court will treat Plaintiff's request as a motion for an order compelling Defendants to provide the U.S. Marshals Service with the location of Defendant Thomas.

In cases involving a plaintiff proceeding IFP, a United States Marshal, upon order of the court, shall serve the summons and the complaint. FED. R. CIV. P. 4(c)(3); 28 U.S.C. § 1915(d). "'[A]n incarcerated pro se plaintiff proceeding in forma pauperis is entitled to rely on the U.S. Marshal for service of the summons and complaint and ... should not be penalized by having his action dismissed for failure to effect service where the U.S. Marshal or the court clerk has failed to perform his duties.'" *Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (quoting *Puett*, 912 F.2d at 275), *abrogated on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995). "So long as the prisoner has furnished the information necessary to identify the defendant, the marshal's failure to effect service is automatically good cause." *Walker*, 14 F.3d at 1422 (quotation omitted). Here, because Plaintiff has not yet been able to ascertain the proper location where Defendant Thomas may now be served, Plaintiff must remedy the situation or face dismissal of his claims against Thomas. *See Walker*, 14 F.3d at 1421-22 (holding prisoner failed to show cause why prison official should not be dismissed under Rule 4(m) where prisoner failed to show he had provided Marshal with sufficient information to effectuate service).

Accordingly, as long as Defendant Thomas is currently employed by the CDCR and/or her forwarding address can be easily ascertained by reference to the CDCR's personnel records, Plaintiff is entitled to rely on the U.S. Marshal to effect service upon Defendant Thomas on his behalf. *See Puett*, 912 F.2d at 275. The Court therefore **GRANTS** Plaintiff's motion to direct service and hereby directs the Deputy Attorney General assigned to this case to contact either the Litigation Coordinator at Calipatria State Prison or the CDCR's Legal Affairs Division, if necessary, and obtain a current address within the CDCR's records or possession, and to forward that address to the U.S. Marshals Service in a confidential memorandum.

VI. CONCLUSION AND ORDER

**IT IS HEREBY ORDERED** that the Court **GRANTS** the Motion to Dismiss by Defendants Levin, Vrooman, Sepulveda, Scribner and Edwards. [Doc. No. 26.] Plaintiff's Complaint as to those Defendants is **DISMISSED** without prejudice.

As to Defendant Thomas, the Court **ORDERS** the Attorney General's office to obtain Thomas' last known contact information from the CDCR, and provide this information to the U.S. Marshal in a *confidential memorandum* indicating that the summons and Complaint are to be delivered to the specified address. The Deputy Attorney General assigned to this case shall provide the U.S. Marshal with any such information on or before **October 20, 2010**. Within forty-five (45) days of receipt of any available addresses from the Deputy Attorney General, the Court **ORDERS** the U.S. Marshal to serve a copy of Plaintiff's Complaint and summons upon Thomas. All costs of service shall be advanced by the United States pursuant to the Court's November 9, 2009 Order directing service pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3). [Doc. No. 16.]

**IT IS FURTHER ORDERED** that the Clerk of the Court provide a copy of: (1) the Court's November 9, 2009 Service Order [doc. no. 16]; (2) this Order; and (3) the Complaint, summons and a blank U.S. Marshal Form 285 to the Deputy Attorney General for purposes of re-attempting service as to Defendant Thomas. Both the Deputy Attorney General and the Office of the U.S. Marshal are **ORDERED** to keep any address provided for Thomas strictly confidential. Thus, any such address *shall not* appear on any U.S. Marshal Form 285, *shall not* be provided to Plaintiff, and *shall not* be made part of the Court's record.

In the event that the CDCR does not have an updated address for Thomas, the Deputy Attorney General shall file a Declaration with the Court to that effect by no later than **October 20, 2010**.

Dated: 9/3/10

WILLIAM Q. HAYES
United States District Judge