1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11   KEVIN DARNELL BRYANT,              )   Case No. 09cv1334-WQH (MDD)
                                        )
12                        Plaintiff,    )   REPORT AND RECOMMENDATION
                                        )   RE: MOTION FOR SUMMARY
13            v.                        )   JUDGMENT
                                        )
14   SELEAINA ANN THOMAS, et al.,       )   [Doc. No. 75]
                                        )
15                        Defendants.   )
                                        )
16

17        This Report and Recommendation is submitted to United States District

18   Judge William Q. Hayes pursuant to 28 U.S.C. § 636(b) and Civil Local Rules

19   72.1(c) and 72.3(f) of the United States District Court for the Southern District of

20   California. For the following reasons, the Court **RECOMMENDS** that Defendants'

21   Motion be **GRANTED**.

22   **I.**   **Procedural History**

23        Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 on June 19, 2009.

24   (Doc. No. 1).  On November 9, 2009, the Court issued an Order *sua sponte*

25   dismissing several of the claims presented in the Complaint.  (Doc. No. 16).  On

26   November 30, 2009, Plaintiff filed a Motion to For Leave to File an Amended

27   Complaint.  (Doc. No. 18).

28        Plaintiff's Motion was granted in part.  Plaintiff was permitted to file an

1   Amended Complaint, but the Amended Complaint was not to include any of the

2   claims previously dismissed by the Court on November 9, 2009.

3          On May 23, 2011, Plaintiff filed a First Amended Complaint ("FAC").  (Doc.

4   No. 39).  On June 3, 2011, Defendants filed an Answer to Plaintiff's FAC.  (Doc. No.

5   50).  On May 18, 2012, Defendants Thomas, Vrooman, and Sepulveda filed the

6   instant Motion for Summary Judgment pursuant to Fed. R. of Civil. Proc. 56.  (Doc.

7   No. 75).  The Court issued an order pursuant to <u>Rand v. Rowland</u>, 154 F.3d 952 (9th

8   Cir. 1998) (<i>en banc</i>) and <u>Klingele v. Eikenberry</u>, 849 F.2d 409 (9th Cir. 1988),

9   advising Plaintiff that a Motion for Summary Judgment had been filed.  (Doc. No.

10  80).  Plaintiff filed a Response in Opposition on July 18, 2012.  (Doc. No. 94).  On

11  July 27, 2012, Defendants filed a Reply.  (Doc. No. 97).  Plaintiff filed a Sur-reply on

12  August 24, 2012.  (Doc. No. 102).

13  **II.    Statement of the Facts**

14         According to Plaintiff, he arrived at Calipatria State Prison on July 12, 2006.

15  (FAC at 2).  When he arrived, Plaintiff presented his medical files to prison medical

16  officials.  <u>Id.</u>  Upon review of his file, medical officials referred Plaintiff to the prison

17  doctor and issued him a cane.  <u>Id.</u>  On July 21, 2006, Plaintiff was seen by Nurse

18  Practitioner Thomas.  <u>Id.</u>  Plaintiff contends that Thomas refused to examine him

19  and refused to honor any of the medical chronos that were issued by the previous

20  institution regarding Plaintiff, even though they were designated as "permanent."

21  <u>Id.</u>

22         Specifically, Plaintiff states that a previously issued medical instruction

23  directed that he be assigned to a cell on a bottom bunk and on a low floor.  <u>Id.</u>

24  Despite this chrono, Plaintiff was assigned to a top bunk on an upper floor.  <u>Id.</u>

25  Plaintiff states that he filed several medical requests to Defendants Vrooman and

26  Sepulveda, and several grievances, but they were all ignored.  <u>Id.</u>

27         Defendants acknowledge that Plaintiff's file contained a medical instruction

28  regarding placement in a low bunk, but state that the instruction had expired when

1   Plaintiff arrived at Calipatria.  Contrary to Plaintiff's claims, Defendants contend

2   that Thomas conducted a comprehensive physical exam of the Plaintiff when he

3   arrived at Calipatria and prepared a Health History file.  (Doc. No. 75 at 7-8).

4   Defendants acknowledge that Plaintiff complained of joint pain in his hands, feet

5   and knees and that Plaintiff requested a low bunk.  Defendants contend that

6   Thomas reviewed Plaintiff's medical file and found that Plaintiff had previously

7   requested a medical instruction for a low bunk but that the request had been

8   deferred because Plaintiff could not establish that he was qualified for it.  Id.

9   Specifically, the medical provider had ordered x-rays of Plaintiff's feet and knees

10  and advised Plaintiff that he would not qualify for a instruction until these tests

11  had been performed and evaluated.  Id.

12      Defendants also contend that Thomas ordered a battery of tests following the

13  initial meeting with Plaintiff and recommended that Plaintiff be issued a

14  instruction allowing him to receive contact lenses from his family.  Id. at 8-9.

15  Thomas advised Plaintiff that when the test results came back, she would discuss

16  the low bunk instruction with Plaintiff.  Id. at 9.  On July 31, 2006, Plaintiff sent

17  Thomas a letter confirming that Thomas ordered several tests and had requested to

18  see him again.  Id.

19      On August 16, 2006, Thomas referred Plaintiff to an optometrist for an eye

20  exam and issued Plaintiff a temporary instruction for contact lenses.  On August 16

21  and August 20, 2006, Plaintiff fell while climbing down from the top bunk.  Plaintiff

22  contends he was severely injured in each fall.  (FAC at 4).  Plaintiff was sent to the

23  medical clinic after each fall, but contends that Defendants Vrooman and Sepulveda

24  refused to let him in the clinic and refused to treat his wounds.  Id.  Plaintiff also

25  contends that they failed to file an incident report even though CDCR regulations

26  require that they do so.

27      Thomas met with Plaintiff again on August 23, 2006, to review the results of

28  the blood tests she had ordered.  (Doc. No. 75 at 10).  Thomas informed Plaintiff

1   that the tests were negative for arthritis.  Id.  On August 25, 2006, the chief medical

2   officer at Calipatria requested an orthopedic exam of Plaintiff to address his

3   complaints of joint pain.  Id.  The request was approved by the prison medical

4   committee on September 25, 2006.

5          Plaintiff contends that on August 27, 2006, he fell down a flight of metal

6   stairs and hit the back of his head on the concrete floor.  (FAC at 4).  Plaintiff states

7   that he was so severely injured that he had to be transported to the prison

8   emergency room via ambulance.  Id.  Plaintiff contends that Defendant Thomas

9   refused to provide him with medical care and simply released him back into the

10  yard without examination or treatment.  Id.

11         Contrary to Plaintiff's claims, Defendants contend that Plaintiff suffered only

12  a bruised and slightly swollen hand, a small cut, and some scraping on the back of

13  his arm.  (Doc. No. 75 at 10).  Defendants also contend that Plaintiff was treated for

14  his injuries.  Plaintiff was prescribed 600 mg of Motrin, three times a day for one

15  month, and 750 mg of Robaxin twice a day for 20 days.  Plaintiff was offered an ice

16  pack, but refused.  A nurse opined that Plaintiff was evasive when questioned about

17  the incident, and seemed more concerned with getting a low bunk instruction than

18  in treating his injuries.  Defendants also contend that a report from August 27,

19  2006, states that Plaintiff was observed moving about with no restriction of

20  movement or signs of discomfort.  Id.  Defendants also state that Plaintiff was seen

21  on August 27, 2006 for x-rays.  Thomas examined Plaintiff on August 28, 2006, and

22  found that Plaintiff's injuries were minor.  Nevertheless, Thomas issued a

23  temporary low bunk instruction and a instruction allowing Plaintiff to obtain ice

24  cubes.  Plaintiff was given pain killers and a bandage for his hand.  Thomas also

25  scheduled a follow-up exam for Plaintiff.  Id. at 11.

26         Plaintiff contends he continued to submit medical requests over the next few

27  months, but that they were all ignored.  (FAC at 4-5).  Defendants acknowledge that

28  Plaintiff was not immediately seen for a follow-up exam, despite Thomas' request,

1  but dispute that Plaintiff was not seen at all.  Plaintiff acknowledges that he was

2  seen by Thomas on September 19, 2006, in the clinic.  Plaintiff contends that

3  Thomas and other medical staff tried to intimidate Plaintiff and ordered him to

4  remove his neck brace, which he did out of fear.  Id.  Defendants dispute that

5  account.  According to Defendants, at that meeting Thomas determined that

6  Plaintiff did not have impaired mobility.  In reaching that determination, Thomas

7  considered Plaintiff's x-rays as well as the blood tests showing Plaintiff did not have

8  arthritis.  (Doc. No. 75 at 12).  Thomas then denied Plaintiff's request for a low

9  bunk instruction.  Defendants acknowledge that Thomas ordered the neck brace

10  removed, but contend that the order was given because the neck brace was no

11  longer useful.  Id.

12      Defendants also contend that Plaintiff was seen again by Thomas on

13  September 22, 2006.  (Doc. No. 75 at 12-13).  At that meeting, Thomas prescribed

14  more pain killers for Plaintiff, ordered an x-ray of Plaintiff's hand and an MRI of

15  Plaintiff's neck.  On September 25, 2006, Plaintiff was issued a second temporary

16  low bunk instruction.  Defendants assert that they continued to treat Plaintiff for

17  the next several months for his joint pain.  Plaintiff was examined by an orthopedic

18  doctor on October 5, 2006 and by Thomas on October 18, 2006.  Thomas renewed

19  Plaintiff's low bunk instruction for another 90 days pending the results of Plaintiff's

20  MRI.

21  **III.    Standard of Review**

22      Rule 56(c) of the Federal Rules of Civil Procedure authorizes the granting of

23  summary judgment "if the pleadings, depositions, answers to interrogatories, and

24  admissions on file, together with the affidavits, if any, show that there is no genuine

25  issue as to any material fact and that the moving party is entitled to judgment as a

26  matter of law." The standard for granting a motion for summary judgment is

27  essentially the same as for the granting of a directed verdict.  Judgment must be

28  entered, "if, under the governing law, there can be but one reasonable conclusion as

09cv1334-WQH (MDD)

1   to the verdict." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1986).  "If

2   reasonable minds could differ," however, judgment should not be entered in favor of

3   the moving party.  Id.

4        The parties bear the same substantive burden of proof as would apply at a

5   trial on the merits, including plaintiff's burden to establish any element essential to

6   his case. Liberty Lobby, 477 U.S. at 252; Celotex v. Catrett, 477 U.S. 317, 322

7   (1986); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  The moving party bears

8   the initial burden of identifying the elements of the claim in the pleadings, or other

9   evidence, which the moving party "believes demonstrates the absence of a genuine

10  issue of material fact."  Celotex, 477 U.S. at 323.  Adickes v. S.H. Kress & Co., 398

11  U.S. 144 (1970); Zoslaw v. MCA Distrib. Corp., 693 F.2d 870, 883 (9th Cir. 1982).

12  "A material issue of fact is one that affects the outcome of the litigation and

13  requires a trial to resolve the parties' differing versions of the truth."  S.E.C. v.

14  Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  More than a "metaphysical

15  doubt" is required to establish a genuine issue of material fact. Matsushita Elec.

16  Indus. Co., Ltd v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

17       The burden then shifts to the non-moving party to establish, beyond the

18  pleadings, there is a genuine issue for trial.  Celotex, 477 U.S. at 324.  To

19  successfully rebut a properly supported motion for summary judgment, the

20  nonmoving party "must point to some facts in the record that demonstrate a

21  genuine issue of material fact and, with all reasonable inferences made in the

22  plaintiff[]'s favor, could convince a reasonable jury to find for the plaintiff[]."  Reese

23  v. Jefferson School Dist. No. 14J, 208 F.3d 736, 738 (9th Cir. 2000)(citing Fed. R.

24  Civ. P. 56; Celotex, 477 U.S. at 323; Anderson, 477 U.S. at 249).

25       While the district court is "not required to comb the record to find some

26  reason to deny a motion for summary judgment," Forsberg v. Pacific N.W. Bell Tel.

27  Co., 840 F.2d 1409, 1417-18 (9th Cir. 1988), Nilsson v. Louisiana Hydrolic, 854 F.2d

28  1538, 1545 (9th Cir. 1988), the court may nevertheless exercise its discretion "in

1   appropriate circumstances," to consider materials in the record which are on file but

2   not "specifically referred to." <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d

3   1026, 1031 (9th Cir. 2001). However, the court need not "examine the entire file for

4   evidence establishing a genuine issue of fact, where the evidence is not set forth in

5   the moving papers with adequate references so that it could be conveniently found."

6   <u>Id</u>.

7          In ruling on a motion for summary judgment, the court need not accept legal

8   conclusions "cast in the form of factual allegations." <u>Western Mining Council v.</u>

9   <u>Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981). "No valid interest is served by withholding

10  summary judgment on a complaint that wraps nonactionable conduct in a jacket

11  woven of legal conclusions and hyperbole." <u>Vigliotto v. Terry</u>, 873 F.2d 1201, 1203

12  (9th Cir. 1989).

13         Section 1983 imposes two essential proof requirements upon a claimant: (1)

14  that a person acting under color of state law committed the conduct at issue, and (2)

15  that the conduct deprived the claimant of some right, privilege, or immunity

16  protected by the Constitution or laws of the United States. <u>See</u> 42 U.S.C. § 1983;

17  <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981) (overruled on other grounds by <u>Daniels</u>

18  <u>v. Williams</u>, 474 U.S. 327, 3301-31 (1986). A person deprives another "of a

19  constitutional right, within the meaning of section 1983, if he does an affirmative

20  act, participates in another's affirmative acts, or omits to perform an act which he is

21  legally required to do that causes the deprivation of which [the plaintiff complains]."

22  <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978). "The inquiry into causation

23  must be individualized and focus on the duties and responsibilities of each

24  individual defendant whose acts or omissions are alleged to have caused a

25  constitutional deprivation." <u>Leer v. Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988).

26  **IV.   Discussion**

27         In their Motion, Defendants contend that Plaintiff's claims against

28  Defendants Vrooman and Sepulveda fail because Plaintiff failed to exhaust his

administrative remedies. (Doc. No. 75 at 9).  Defendants also contend that Plaintiff's claim that Thomas was deliberately indifferent to his medical needs fails as the evidence shows that Thomas adequately responded to Plaintiff's medical concerns.  Id.

### A.     Failure to Exhaust Administrative Remedies

In their Motion, Defendants contend that all of Plaintiff's claims against Defendants Vrooman and Sepulveda, and his conspiracy claims against all three Defendants fail as a matter of law because Plaintiff has failed to exhaust his administrative remedies.  (Doc. No. 75 at 19).  In his Response, Plaintiff counters that he properly exhausted his administrative remedies by mailing two appeals to the CDCR director for review.  (Response at 6).

The Ninth Circuit has held that "failure to exhaust nonjudicial remedies is a matter in abatement, not going to the merits of the claim, and as such is not properly raised in a motion for summary judgment."  Id. at 368.  "When a defendant files a summary judgment motion that raises the issue of exhaustion of non-judicial remedies, the motion should be treated as a 'nonenumerated' motion to dismiss under Federal Rule of Civil Procedure 12(b)."  Irvin v. Zamora, 161 F. Supp. 2d 1125, 1128 (S.D. Cal. 2001) (citing Ritza, 837 F. 2d. at 368-69).  Because Defendants claim that Plaintiff failed to exhaust his administrative remedies, this Court will treat the Defendants' Motion for Summary Judgment as a nonenumerated motion under Federal Rule 12(b), rather than a summary judgment motion pursuant to Federal Rule 56, when considering that claim.

When presented with a motion to dismiss for a failure to exhaust non-judicial remedies the standard of review is broadened beyond the normal scope of 12(b).  See Wyatt v. Terhune, 315 F.3d 1108, 1119-20 (9th Cir. 2003).  In deciding a motion to dismiss for a failure to exhaust non-judicial remedies the Court may look beyond the pleadings and decide disputed issues of fact.  Id.  "[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed

1   material facts will not preclude the trial Court from evaluating for itself the merits

2   of jurisdictional claims." Ritza, 837 F. 2d. at 369.

3                    **1.     Claims against Defendants Vrooman and Sepulveda**

4           In his FAC, Plaintiff contends that Defendants Vrooman and Sepulveda

5   acted with deliberate indifference when they refused to treat his injuries.

6   Specifically, Plaintiff alleges that Defendants Vrooman and Sepulveda refused to

7   file an incident report after he fell, and refused to honor his medical instructions.

8   (FAC at 6).

9           Defendants contend that Plaintiff's claims against Defendants Vrooman and

10  Sepulveda should be dismissed because Plaintiff failed to exhaust his

11  administrative remedies as to those claims.  Defendants acknowledge that Plaintiff

12  filed several grievances regarding his falls and his medical instructions, but contend

13  that he did not file a final, director's level appeal on any grievance involving

14  Defendants Vrooman and Sepulveda.

15          In support of their Motion, Defendants provide the sworn declaration of

16  Pedro Alaniz, the Appeals Coordinator at Calipatria State Prison.  (Doc. No. 75, Ex.

17  3, Decl. of Pedro Alaniz).  Alaniz states that he reviewed all appeals filed by

18  Plaintiff and found only four related to medical care that had been properly

19  exhausted.  (Alaniz Decl. ¶ 2).  None of the exhausted claims involve Defendants

20  Vrooman or Sepulveda.  Id.  Defendants also provide copies of Plaintiff's grievances

21  and the prison's responses.  (Doc. No. 75, Ex. 3).  These records do not contain any

22  decision at the Director's level of review regarding Plaintiff's claims against

23  Vrooman or Sepulveda.

24          In his Response, Plaintiff counters that he did file appeals at the Director's

25  Level of Review.  (Response at 6).  In support, Plaintiff provides a copy of an

26  attachment to an appeal form dated September 24, 2006, and numbered CAL-D-

27  0602105.  (Response, Ex. D).  In the attachment, Plaintiff states that Defendant

28  Thomas refused to see him until after Ms. Edwards spoke with Defendant Vrooman.

(Response, Ex. D., pg 87).

It is unclear if this attachment was part of Plaintiff's actual appeal, as the appeal itself is dated August 20, 2006, and was thus submitted over a month before the attachment was drafted.  Even if the attachment was a part of the appeal, however, it would not establish that Plaintiff properly exhausted his claim against Vrooman or Sepulveda.  Neither the appeal nor the attachment describe improper conduct by Vrooman or Sepulveda.  Rather, the appeal is directed at Defendant Thomas' failure to treat Plaintiff.  Id.  Defendants do not dispute that Plaintiff properly exhausted his claims against Defendant Thomas.

Thus, Plaintiff's own exhibits confirm Alaniz's sworn declaration.  Defendants have established that Plaintiff failed to exhaust his administrative remedies with regard to all claims against Defendants Vrooman and Sepulveda.  Accordingly, those claims are not properly before the Court and the Court **RECOMMENDS** that those claims be **DISMISSED** without prejudice.

### 2.    Conspiracy Claims

In his FAC, Plaintiff contends that since his August 27, 2006 fall, Defendants "conspired together to cover up their actions and failures to act resulting from defendant Thomas' actions[.]" (FAC at 6).  In their Motion, Defendants contend that Plaintiff provides no support for this claim beyond this initial statement, and that according to the sworn declaration of Alaniz, Plaintiff failed to exhaust a conspiracy claim against any Defendant.  (Doc. No. 75 at 25).  A review of the appeals records provided by Plaintiff reveals that Plaintiff has failed to exhaust a conspiracy claim against any Defendant.  Plaintiff does not address his conspiracy claims in his Response or in his Sur-Reply.

Accordingly, Plaintiff's conspiracy claim is not properly before the Court, and the Court **RECOMMENDS** that the claim be **DISMISSED** without prejudice.

/ / /

/ / /

10

**B.**   **Eighth Amendment Claims**

In his FAC, Plaintiff asserts that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment.  (FAC at 3). Plaintiff contends that Defendants refused to honor a previously issued medical instruction that stated that Plaintiff should be assigned to a low bunk on the ground floor.  (FAC at 2-3).  Defendants assigned Plaintiff to a top bunk on a high level.  Plaintiff alleges that he fell repeatedly, causing severe injury.  Id.  Plaintiff also contends that Defendants repeatedly refused to treat him.  Id.   As discussed above, the claims against Vrooman and Sepulveda are not properly exhausted. Thus, the Court will only address Plaintiff's claims against Defendant Thomas.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being."  DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 199-200 (1989).  Medical care is one of the responsibilities placed on the State, because a prisoner "must rely on prison authorities to treat his medical needs."  Estelle v. Gamble, 429 U.S. 97, 103 (1976). A prison official violates the Eighth Amendment when the official acts with deliberate indifference to a prisoner's serious medical needs.  Id. at 104-105.  For a prisoner to demonstrate an Eighth Amendment violation two components must be satisfied.  The plaintiff must allege that he/she (1) suffered an objectively serious medical need and (2) that the defendant was deliberately indifferent to this need. See Wilson v. Seiter, 501 U.S. 294, 298 (1991).

The objective component of an Eighth Amendment violation requires the showing of a serious medical need.  Id.  A serious medical need is demonstrated by a showing that the "failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citation omitted).  "The existence of an injury that a reasonable doctor or patient would find important and worthy of

1   comment or treatment; the presence of a medical condition that significantly affects

2   an individual's daily activities; or the existence of chronic and substantial pain" are

3   indications that a prisoner has a serious need for medical treatment.  McGuckin v.

4   Smith, 974 F.2d 1050, 1059-1060 (9th Cir.1992) (overruled on other grounds by

5   WMX Techs. v. Miller, 104 F.2d 1133, 1136 (9th Cir.1997) (en banc)).

6               **1.     Objective Medical Need**

7          In their Motion, Defendants contend that because Plaintiff did not have a

8   valid medical instruction, he fails to establish that he had a serious medical need.

9   Defendants acknowledge that Plaintiff was issued a medical instruction at a

10  previous institution.  (Doc. No. 75 at 11).  Defendants state that the instruction,

11  which was issued in 2003, had expired by the time Plaintiff was transferred to

12  Calipatria in 2006.  Id.  Defendants contend they were prohibited from honoring an

13  expired instruction and that Plaintiff bore the responsibility for requesting a new

14  instruction.

15         In support, Defendants provide the sworn declaration of Carmelita Martin, a

16  Health Program Specialist at Calipatria.  In her declaration, Martin states that

17  according to Chapter 23 of the CDCR's Inmate Medical Services Program Policies

18  and Procedures Mandate/Manual ("CDCR Manual"), any accommodation

19  instruction designated as "permanent" must be reviewed annually and it is the

20  responsibility of the inmate to request review prior to the instruction's expiration.

21  (Martin Decl. At ¶ 2-3).  A copy of the CDCR manual was attached as Exhibit A to

22  Martin's Declaration.

23         Defendants also point to additional evidence that Plaintiff's instruction had

24  expired.  Defendants provide the sworn of declaration of Defendant Thomas, in

25  which Thomas asserts that Plaintiff's medical file contained an instruction issued in

26  April 2005 which deferred Plaintiff's request to be placed in a low bunk because

27  Plaintiff did not meet the requisite criteria.  (Thomas Decl. ¶ 8, Ex. C).  Thomas

28  also states that a review of Plaintiff's medical file on July 21, 2006, showed that

1   Plaintiff's previous request for a low bunk was not granted.  Instead, the medical

2   provider ordered x-rays or Plaintiff's feet and knees to determine if Plaintiff

3   actually had a need for a medical instruction, and determined that Plaintiff could

4   not be considered qualified for the instruction until the x-rays were reviewed.  Id. ¶

5   8, Ex. C.  Defendants contend that this evidence establishes conclusively that

6   Plaintiff did not have an objective, serious medical need, and therefore Plaintiff fails

7   the first prong of the Eighth Amendment analysis.

8          The Court finds that there are material facts in dispute that preclude

9   summary judgment on this prong on the Eighth Amendment analysis. Defendants

10  provide evidence that Plaintiff's last instruction request had been deferred pending

11  the results of x-rays. Defendants also acknowledge, however, that Plaintiff had

12  previously been granted a medical instruction, which indicates that Plaintiff had a

13  serious medical need in the past.  (Doc. No. 75 at 9).  Also, Defendant Thomas

14  issued a temporary low bunk instruction to Plaintiff on three separate occasions,

15  indicating that even Thomas acknowledged the existence of an injury requiring

16  treatment.  (Doc. No. 75 at 9).  Defendants are correct that Plaintiff's objective

17  medical tests, including x-rays and blood tests, failed to show a determinable

18  impairment to Plaintiff, leading Thomas to conclude that Plaintiff did not have

19  impaired mobility.   Nevertheless, Thomas concluded that Plaintiff's condition

20  justified a low bunk instruction.  The existence of an injury that medical officials

21  find worthy of treatment is sufficient to satisfy the objective component of the

22  Eighth Amendment analysis.  McGuckin, 974 F.2d at 1059-1060.  Accordingly, even

23  though the exact nature and extent of Plaintiff's joint pain is unknown, there is

24  sufficient evidence on the record to support Plaintiff's contention that he had an

25  objectively serious medical need.

26         Even if Plaintiff's pre-existing joint pain is insufficient to establish an

27  objectively serious injury, Plaintiff's injuries following his August 27, 2006, fall

28  would likely qualify.  Defendants acknowledge that Plaintiff suffered cuts, bruises,

1    and scrapes, and that Plaintiff was prescribed pain killers.  While some injuries

2    may be so insignificant as to be *de minimus* and therefore insufficient to satisfy the

3    Eighth Amendment analysis, it is not clear from the record before the Court that

4    Plaintiff's injuries were so minimal.

5                    **2.      Deliberate Indifference**

6            The subjective component of an Eighth Amendment claim requires that the

7    prison official acted with deliberate indifference to the plaintiff's serious medical

8    need.  See Wilson, 501 U.S. at 298.  A prison official acts with deliberate

9    indifference when he/she denies, delays or interferes with the treatment of the

10   serious medical needs of a prisoner.  Estelle, 429 U.S. at 104-5.  "This is true

11   whether the indifference is manifested by prison doctors in their response to the

12   prisoner's needs or by prison guards in intentionally denying or delaying access to

13   medical care or intentionally interfering with the treatment once prescribed."  Id.

14           "[D]eliberate indifference describes a state of mind more blameworthy than

15   negligence."  Farmer v. Brennan, 511 U.S. 825, 835 (1994).  "[A] complaint that a

16   physician has been negligent in diagnosing or treating a medical condition does not

17   state a valid claim of medical mistreatment under the Eighth Amendment."

18   Estelle, 429 U.S. at 106.  The indifference to medical needs must be substantial;

19   mere malpractice, or even gross negligence, does not constitute cruel and unusual

20   punishment.  Id.

21           Plaintiff contends that Defendant Thomas was deliberately indifferent

22   because she repeatedly refused to examine him, refused to treat him following his

23   falls, and refused to issue him a permanent low bunk instruction.  (FAC at 5).

24   Plaintiff offers no support, other than his pleadings, to show that Defendant

25   Thomas acted with deliberate indifference.

26           Defendants counter that there is considerable evidence that Thomas

27   responded appropriately to Plaintiff's medical needs.  Specifically, Defendants note

28   that Plaintiff's medical file contains numerous entries detailing exams by

                                        14

1   Defendant Thomas, and that Plaintiff was promptly seen and treated following

2   every injury.

3                    **1.     Refusal to Examine Plaintiff Upon Arrival at Calipatria**

4                    **and Refusal to Issue a Permanent Low Bunk Instruction**

5            First, in his FAC, Plaintiff contends that Defendant Thomas was deliberately

6   indifferent because she refused to examine him when he arrived at Calipatria,

7   refused to honor the low bunk instruction issued at a previous institution, and

8   because she refused to issue him a permanent low bunk instruction when she

9   examined him on July 21, 2006. (FAC at 2).

10          In their Motion, Defendants contend that Thomas was not deliberately

11  indifferent, as she was required to follow prison procedure before honoring

12  Plaintiff's pre-existing instruction, and because she took steps to facilitate Plaintiff

13  being provided with a new low bunk instruction.

14          As discussed above, Defendants have provided significant evidence showing

15  that Plaintiff's previous instruction was expired, and that medical personnel at the

16  previous institution to house Plaintiff had deferred issuing an instruction until

17  Plaintiff underwent objective testing to determine if an instruction was required.

18  This evidence is also supported by Thomas' sworn declaration.

19          According to her sworn declaration, Defendant Thomas examined Plaintiff's

20  medical file and found that Plaintiff's previous request for an instruction was

21  deferred because no objective evidence supported Plaintiff's request. (Thomas Decl.

22  ¶ 8).  Thomas states that she did not have the authority to issue a new instruction,

23  which is the responsibility of a Medical Instruction Committee. Id.  Thomas also

24  states that because Plaintiff's previous request was deferred pending objective

25  testing, she was also required to defer Plaintiff's request pending those tests.  Id.

26          Rather than reject Plaintiff's request outright, however, Thomas ordered the

27  testing necessary to determine if Plaintiff qualified for a low bunk, including x-ray

28  tests and blood tests for arthritis. (Thomas Decl. ¶ 6-10).  Defendants provide

                                                   15

1   Thomas' notes from her July 21, 2006 exam of Plaintiff.  (Thomas Decl., Exs. A

2   (Chronic Care Program Baseline Health History), B (Interdisciplinary Progress

3   Notes), C (Physician's Progress Notes), D (Physician's Orders).  According to the

4   notes, Thomas ordered a battery of tests, including a series of tests to address

5   Plaintiff's joint pain.  (Thomas Decl. ¶ 9).  Contrary to Plaintiff's statement that

6   Thomas refused to examine his extremities for joint pain, Thomas' notes indicate

7   that she examined Plaintiff extensively, including his extremities.  (Thomas Decl.,

8   Ex. B-D).  Thomas prescribed medication for Plaintiff, including pain killers for his

9   joint pain, and Thomas submitted a request that Plaintiff be given a medical

10  instruction for contact lenses.  (Thomas Decl., Ex. D at 597; Ex. F).  That request

11  was eventually denied by the review board.  Thomas also ordered all of Plaintiff's

12  medical records and directed Plaintiff to return after he had completed his testing.

13  (Thomas Decl. ¶ 11).  Thomas states that Plaintiff acknowledged these instructions,

14  and sent a follow-up letter on July 31, 2006, acknowledging that Thomas had

15  ordered testing and a follow-up visit.  Defendants provide a copy of that letter along

16  with Thomas' Declaration.  (Thomas Decl., Ex. G).

17      Defendants have provided evidence that Thomas thoroughly examined

18  Plaintiff upon his arrival, considered his prior medical history, and treated Plaintiff

19  appropriately.  Plaintiff has provided no evidence that Thomas deliberately

20  withheld treatment, delayed treatment, or interfered with treatment.  Rather, the

21  evidence on record indicates that Thomas considered Plaintiff's medical history and

22  undertook appropriate actions to determine if Plaintiff should be given a medical

23  instruction.  While Plaintiff contends that Thomas refused to consider his previous

24  instructions and refused to acknowledge his obvious ailments, that account is

25  contradicted by Thomas' extensive notes from her July 21, 2006 exam, in which she

26  discusses Plaintiff's medical history, explicitly considers Plaintiff's previous

27  instructions, and determines that the appropriate course was to obtain objective

28  test results that would confirm the need for a medical instruction.  (Thomas Decl.,

Exs. A-G).  Nothing in the record suggests that Plaintiff's injuries were so obvious that Thomas was indifferent for failing to respond, and nothing suggests that immediate action by Thomas was necessary to prevent future harm to Plaintiff. Estelle, 429 U.S. at 104-5.  At most, Plaintiff has described a difference in opinion with Thomas, in that he would prefer she had taken a different course of action. Such a dispute, however, is not actionable under the Eighth Amendment.  Id.  Only if Thomas deliberately denied or delayed treatment would her actions be prohibited by the Eighth Amendment.  Even if Thomas was negligent in not responding to Plaintiff sooner or following up with Plaintiff earlier, a proposition which is not supported by the record, such negligence would not rise to the level of an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. at 835.

In light of the evidence provided by Defendants that refutes Plaintiff's contentions in his FAC, and Plaintiff's failure to provide any evidence in support of his claims beyond the statements in his FAC, the Court **RECOMMENDS** that Defendants' Motion be **GRANTED** as to this claim.

### 3.    Subsequent Medical Treatment

In his FAC, Plaintiff contends that following his initial exam, Thomas continuously refused to treat him.  (FAC at 2-5).  Plaintiff contends he filed numerous requests for treatment, but Thomas ignored them all.  Plaintiff provides no support for this claim beyond the statements in his FAC.

In their Motion, Defendants contend that Thomas was attentive to Plaintiff's needs and treated him appropriately.  Defendants provide Thomas' sworn declaration and medical records drafted by Thomas in support of their Motion. According to Thomas' sworn declaration, she met with Plaintiff again on August 17, 2006, and on August 23, 2006.  (Thomas Decl. ¶ 10-17, Exs. J and M).  At the August 16, 2006 meeting, Thomas submitted an urgent Physician Request for Plaintiff, referring him to an optometrist for an eye exam so that Plaintiff could receive an instruction for contact lenses.  Id.  Thomas also issued a temporary

1    instruction for contact lenses.  Id.  At the August 23, 2006 meeting, Thomas

2    discussed the results of Plaintiff's blood test with him, and informed him that the

3    tests were negative for rheumatoid arthritis.  Id.

4          Defendants have provided evidence that Thomas responded promptly and

5    appropriately to Plaintiff's medical needs.  While Plaintiff states that his medical

6    needs were ignored, the medical records and sworn declaration of Thomas refute his

7    claim.  Plaintiff contends that he required more treatment, but he does not

8    establish that Thomas deliberately denied, delayed, or interfered with any

9    treatment.  Even if Thomas was negligent in not following up sooner with Plaintiff

10   regarding his test results, such negligence does not rise of the level of deliberate

11   indifference and is not actionable under the Eighth Amendment.  Farmer v.

12   Brennan, 511 U.S. at 835.   Accordingly, the Court **RECOMMENDS** that

13   Defendants' Motion be **GRANTED** as to this claim.

14          **4.    Treatment Following Plaintiff's August 27, 2006 Fall**

15          In his FAC, Plaintiff contends that Thomas refused to examine him following

16   his August 28, 2006 fall, despite his obvious and significant injuries, and that

17   Thomas was deliberately indifferent when she ordered him discharged from the

18   outpatient housing unit.  (FAC at 4).

19          Defendants provide significant evidence to refute Plaintiff's claim that

20   Thomas refused to treat him following his fall.  According to Thomas' sworn

21   declaration, Plaintiff was treated immediately following his fall.  (Thomas Decl.¶

22   19).  Thomas states that Plaintiff's medical records from August 27, 2006 and

23   August 28, 2006, indicate that Plaintiff suffered minor injuries to his right hand,

24   right arm, and left wrist.  Id.  The notes, which are attached to Thomas' Declaration

25   as Exhibit O, state that Plaintiff showed no signs of discomfort following his fall,

26   was able to move freely, and that he refused an ice pack.  (Thomas Decl., Ex. O).

27   Plaintiff was prescribed pain killers and a muscle relaxer, and scheduled Plaintiff

28   for hand and spinal x-rays.  Id.

18

1   Thomas examined Plaintiff the next day, and ordered a temporary low bunk

2   instruction and an ACE bandage. (Thomas Decl. ¶ 22). Plaintiff was also scheduled

3   for a follow up visit. Id. Thomas saw Plaintiff again on September 22, 2006. Id. at

4   25. Thomas states that she never refused to see Plaintiff. Id.

5   Nothing in Plaintiff's medical records suggests that Thomas was deliberately

6   indifferent to his medical needs. Rather, the records indicate that Thomas

7   thoroughly reviewed Plaintiff's medical file, examined Plaintiff, and treated all of

8   Plaintiff's apparent injuries. Even if Plaintiff disagreed with the treatment he

9   received, nothing in the record suggest that Thomas denied, delayed, or interfered

10  with Plaintiff's treatment. Plaintiff contends that he should have been seen sooner,

11  but such a complaint has no bearing on his claim against Thomas, as the record

12  indicates that Thomas requested a follow-up appointment with Plaintiff. (Thomas

13  Decl., Ex. O). Plaintiff has put forth no evidence to rebut Thomas' contention that

14  she is not in charge of scheduling and has no authority to determine scheduling

15  beyond putting in a request for an appointment. Accordingly, the evidence on

16  record shows that Thomas treated Plaintiff thoroughly and promptly following his

17  fall.

18  In light of Plaintiff's failure to provide any evidence in support of his claim

19  that Thomas was deliberately indifferent to his medical needs following his fall or

20  that he was harmed by his discharge from the Outpatient Housing Facility, and in

21  light of Defendants' evidence that Thomas treated all of Plaintiff's apparent injuries

22  and sought additional treatment, the Court **RECOMMENDS** that Defendants'

23  Motion be **GRANTED** as to this claim.

24  **5.    Conclusion**

25  Plaintiff has failed to establish that Defendant Thomas was deliberately

26  indifferent to his medical needs. Plaintiff provides no support for his claims other

27  than assertions in his FAC that he should have been treated more. Defendants, on

28  the other hand, provide evidence to refute Plaintiff's claims and support their

1   assertion that Thomas reacted appropriately to all of Plaintiff's medical needs, and

2   was in fact diligent in assisting Plaintiff, including Thomas' sworn declaration and

3   medical records detailing the extensive treatment Plaintiff received.  Accordingly,

4   Plaintiff has failed to satisfy the second prong of his Eighth Amendment claim, and

5   the Court **RECOMMENDS** that Defendants' Motion be **GRANTED** as to this

6   claim.

7   **V.**   **Conclusion**

8        For the reasons set forth herein, it is **RECOMMENDED** that Plaintiff's

9   claims against Defendants Vrooman and Sepulveda be **DISMISSED** for failure to

10  exhaust, and that unless Plaintiff can establish that those claims are timely, leave

11  to amend those claims should not be granted.  The Court also **RECOMMENDS**

12  that Defendant's Motion for Summary Judgment be **GRANTED** as to claims

13  against Defendant Thomas.

14       **IT IS ORDERED THAT:**

15       This Report and Recommendation will be submitted to the United States

16  District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. §

17  636(b)(1) (1988).

18       Any party may filed written objections with the court and serve a copy on all

19  parties by **September 28, 2012**.  The document shall be captioned "Objections to

20  Report and Recommendation."  Any reply to the objections shall be served and filed

21  by **October 12, 2012**.  The parties are advised that failure to file objections within

22  the specific time may waive the right to raise those objections on appeal of the

23  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

24       **IT IS SO ORDERED**

25  DATED:  September 7, 2012

26

27                                        Hon. Mitchell D. Dembin

28                                        U.S. Magistrate Judge

20

09cv1334-WQH (MDD)