1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

9
10
11
12
13

| KEVIN DARNELL BRYANT, | CASE NO. 09-cv-1334 WQH (MDD) |
|---|---|
| Plaintiff, | REPORT AND RECOMMENDATION RE: DEFENDANTS' MOTION TO DISMISS |
| v. | |
| SELEAINA THOMAS, et al., | |
| Defendants. | [ECF No. 133] |

14
15
16
17
18
19

    This Report and Recommendation is submitted to United States District Judge William Q. Hayes pursuant to 28 U.S.C. § 636(b)(2009) and Local Civil Rules 72.1(c) and 72.3(f) of the United States District Court for the Southern District of California.  For the following reasons, the Court **RECOMMENDS** that Defendants' motion be **GRANTED**.

20

**I. PROCEDURAL BACKGROUND**

21
22
23
24
25
26

    Plaintiff Kevin Darnell Bryant (hereinafter "Plaintiff" or "Bryant") is a state prisoner proceeding *pro se*.  (ECF No. 1).  On June 19, 2009, Plaintiff filed a civil rights Complaint pursuant to 42 U.S.C § 1983 against officials at Calipatria State Prison ("Calipatria").  (*Id.*).  On November 9, 2009, the Court *sua sponte* dismissed several claims presented in the Complaint.  (ECF No. 16).

27
28

    On May 23, 2011, Plaintiff filed a First Amended Complaint ("FAC") against Defendants Thomas, Vrooman and Sepulveda alleging

that Defendants violated his Eighth Amendment rights by failing to provide adequate medical care during Plaintiff's incarceration at Calipatria in 2006.  (ECF No. 48).  On June 3, 2011, Defendants answered.  (ECF No. 50).  On May 18, 2012, Defendants moved for summary judgment claiming that Plaintiff did not exhaust his administrative remedies against Defendants Vrooman and Sepulveda, and that Plaintiff did not establish that Defendants were deliberately indifferent to Plaintiff's serious medical needs.  (ECF No. 75).  Plaintiff responded in opposition on July 18, 2012.  (ECF No. 94).  On July 27, 2012, Defendants replied.  (ECF No. 97).  Plaintiff filed a sur–reply on August 24, 2012.  (ECF No. 102).

On September 7, 2012, this Court issued a Report and Recommendation recommending that the Defendants' Motion for Summary Judgment be granted as to Defendants Vrooman and Sepulveda on the grounds that Plaintiff failed to exhaust administrative remedies against those Defendants.  (ECF No. 104).  This Court also recommended that the Motion for Summary Judgment be granted as to Defendant Thomas on the grounds that Plaintiff failed to demonstrate that Thomas was deliberately indifferent to Plaintiff's medical needs.  (*Id.*).

On October 1, 2012, Plaintiff objected to the Report and Recommendation, "stipulate[d] to [this Court's] Conclusion that [he] did not exhaust administrative remedies on [D]efendants Vrooman and Sepulveda" and reiterated the arguments regarding Defendant Thomas. (ECF No. 106).  On October 12, 2012, Defendants replied.  (ECF No. 107).  Plaintiff supplemented his objections with a Sur–Reply on November 19, 2012.  (ECF No. 111).  United States District Judge William Q. Hayes overruled Plaintiff's objections, adopted this Court's findings and recommendations in their entirety, granted the motion for summary

1  judgment and gave Plaintiff leave to file an amended complaint against
2  Vrooman and Sepulveda.  (ECF No. 114).

3       Plaintiff did not file an amended complaint, but instead appealed
4  the Court's order to the Ninth Circuit.  (ECF No. 116).  Plaintiff's appeal
5  was dismissed for lack of jurisdiction.  (ECF No. 120).  On March 22,
6  2013, Judge Hayes ordered the case to be closed because Plaintiff had
7  failed to amend his claims against Defendants Vrooman and Sepulveda.
8  (ECF No. 122).  Accordingly, on March 25, 2013, a Judgment against
9  Plaintiff was entered and the case was closed.  (ECF No. 123).

10      On April 17, 2013, Plaintiff notified the Court about his placement
11  on "suicide watch" beginning in January 2013.  (ECF No. 124 at 2).
12  Plaintiff claimed to have remained on suicide watch until April 4, 2013,
13  resulting in his inability to comply with the Court's orders.  (*Id.* at 2–3).
14  On April 24, 2013, Judge Hayes vacated the Court's judgment and
15  reopened the case.  (ECF No. 125).  The Court extended the deadline for
16  Plaintiff to file a second amended complaint, which Plaintiff filed on July
17  26, 2013.  (ECF No. 132).  On August 12, 2013, Defendants Sepulveda and
18  Vrooman moved to dismiss Plaintiff's Second Amended Complaint
19  ("SAC").  (ECF No. 133).

20      On August 26, 2013, Plaintiff opposed Defendants' Motion to
21  Dismiss Plaintiff's SAC ("Opposition").  (ECF No. 135).  Defendants
22  replied on September 27, 2013.  (ECF No. 136).  In their Reply,
23  Defendants contend that Plaintiff's claims should be dismissed with
24  prejudice because Plaintiff failed to exhaust his administrative remedies
25  and alternatively failed to state a cause of action upon which relief may be
26  granted.  (*Id.*).

27

28

# II. STATEMENT OF FACTS

Plaintiff is a state prisoner who was transferred to Calipatria on July 12, 2006.  (ECF No. 48 at 2).  At that time, Defendants were employed at the prison's medical clinic in the following positions: Vrooman, as a Medical Technical Assistant ("MTA"), and Sepulveda, as a Registered Nurse ("RN").  (*Id.* at 1).  In his SAC, Plaintiff asserts that MTA Vrooman and RN Sepulveda violated his constitutional rights because they failed to provide him with adequate medical care.  (ECF No. 132 at 3).

Plaintiff contends that he is impaired due to severe arthritis in his legs, hips, back, arms and hands.  (ECF No. 133–2 at 11).  Plaintiff alleges that his medical condition justified a housing assignment on a lower bunk and lower tier.  (*Id.*).  Plaintiff asserts that former Defendant Thomas, a Family Nurse Practitioner ("FNP") at Calipatria, refused to recognize Plaintiff's medical condition and permanent lower bunk/lower tier chronos issued from his prior California Department of Corrections and Rehabilitation ("CDCR") doctors.  (ECF No. 132 at 3).  Defendants acknowledge that Plaintiff had been previously given a medical chrono requiring that he be placed in a low bunk, but claim that the chrono expired when Plaintiff arrived at Calipatria.  (ECF No. 75 at 7–8).  Plaintiff was assigned to a cell on an upper tier and on a top bunk.  (ECF No. 132 at 3).

Plaintiff contends in his SAC that on August 16, 20, and 25, 2006, he fell while climbing down from his upper bunk, sustaining serious injuries.  (*Id.*).  Bryant alleges that he sought medical care after each fall, but was refused care by Defendants Vrooman and Sepulveda.  (*Id.*).  Plaintiff claims that on all three occasions Vrooman and Sepulveda did not even allow him to enter the prison's medical clinic to clean the blood

from his wounds. (*Id*.). Plaintiff further claims that Defendants refused to file incident reports as required by CDCR regulations. (*Id*.).

Plaintiff alleges that on August 27, 2006, he fell down a flight of metal stairs and sustained serious injuries. (*Id*.). Defendants claim that Bryant only suffered a bruised and slightly swollen hand, a small cut, and scraping on his arm. (ECF No. 75 at 10). Defendants assert that Plaintiff was treated for his injuries and was prescribed pain medications. (*Id*.). Plaintiff acknowledges that he was prescribed pain medications, but asserts that on several occasions Thomas refused to renew his pain medication prescriptions. (ECF No. 1 at 2–3). Plaintiff contends that both Vrooman and Sepulveda repeatedly lied to him on such occasions, claiming that FNP Thomas ordered pain medication for Plaintiff, despite their knowledge to the contrary. (ECF No. 132 at 3). Furthermore, Plaintiff claims that Vrooman admitted to him that FNP Thomas asked both Defendants to lie to Plaintiff regarding her order of Plaintiff's pain medications. (*Id*.). Plaintiff claims that Vrooman also admitted that Defendants deliberately prevented Plaintiff from seeing Thomas to address his complaints. (*Id*.). As a result, according to Plaintiff, his injuries from the falls were untreated and unreported. (*Id*.).

With regards to the incidents described above, Plaintiff asserts that he exhausted available administrative remedies against Defendants Vrooman and Sepulveda. (ECF No. 135 at 1–2). Defendants deny that Plaintiff filed prison appeals regarding the allegations that Vrooman and Sepulveda refused to treat Plaintiff on August 16, 20, and 25, 2006, or that they conspired to lie to Plaintiff about his pain medications. (ECF No. 136 at 1–2). Defendants further contend that even if Plaintiff filed prison appeals regarding these allegations, those appeals were not adjudicated at the third and final level, and thus were not exhausted. (*Id*.

1  at 2).

2       Defendants provide as evidence the Declaration of Porfirio Nava, the

3  Appeals Coordinator at Calipatria, summarizing the appeals that Plaintiff

4  filed while he was housed in Calipatria.  (ECF No. 133–2 at 1–3).  After

5  reviewing Plaintiff's third level appeal records, Nava determined that

6  Plaintiff exhausted four appeals.  (*Id.* at 2).  One of the exhausted appeals

7  concerned Plaintiff's request to receive contact lenses, and anther appeal

8  addressed dental care.  (*Id.*).  Plaintiff does not contend that either of

9  those appeals relate to his claims against Defendants Vrooman and

10 Sepulveda.  (*See* ECF. Nos. 132, 135).

11      Plaintiff references the remaining two exhausted appeals in his SAC

12 and claims that those appeals properly exhausted his administrative

13 remedies against Defendants Vrooman and Sepulveda.  (*See* ECF No. 135

14 at 1–3).  The first exhausted appeal, CAL 06–02105 (hereinafter "Appeal

15 One"), concerned Bryant's request for a low tier/low bunk medical

16 accommodation chrono and FNP Thomas' alleged refusal to order such a

17 chrono.  (ECF No. 133–2 at 2).  The second exhausted appeal, CAL

18 06–02166 ("Appeal Two"), concerned Plaintiff's request to be issued a form

19 permanently documenting his alleged disabilities.  (*Id.*).

20      On August 20, 2006, Plaintiff initiated Appeal One by filing a

21 Reasonable Modification or Accommodation Request form for "lower

22 bunk/lower tier" in a specific prison housing facility.  (*Id.* at 11).  Plaintiff

23 stated that he suffered from severe arthritis, and complained of serious

24 headaches and a wrist injury resulting from his fall on August 16, 2006.

25 (*Id.*).  Plaintiff did not mention Defendants Vrooman or Sepulveda in his

26 written statement.  (*See id.*).

27      On August 28, 2006, FNP Thomas interviewed Plaintiff and issued a

28 lower bunk chrono for fourteen days for an "acute arm injury" caused by

1    Plaintiff's fall.  (*Id.* at 14).  On August 29, 2006, a First Formal Level
2    Response approved a temporary lower bunk chrono for fourteen days.  (*Id.*
3    at 14).  Additionally, the decision advised Plaintiff that reassignment to
4    another housing facility was not appropriately handled by the Medical
5    Department.  (*Id.*).  Plaintiff was also instructed to report to "Medical
6    Sick–Call" for assistance rather than file a Reasonable Modification or
7    Accommodation Request for acute incidents.  (*Id.*).  The decision did not
8    reference Vrooman or Sepulveda.  (*See id.*).

9         On September 5, 2006, Plaintiff appealed the First Level Appeal
10   decision by filing a "Citizen Complaint" against FNP Thomas.  (*Id.* at 12).
11   Plaintiff claimed that Thomas violated his Eighth Amendment rights by
12   only recommending a temporary grant of a lower bunk/lower tier chrono.
13   (*Id.*).  Plaintiff also made the following statement in his appeal: "[o]n
14   08/02/06, I was placed in a upper bunk/upper tier, and since that time I've
15   fallen four times getting down from the upper bunk. I've reported each
16   incident to MTA at the Clinic."  (*Id.* at 12, 16).

17        On September 24, 2006, Plaintiff filed an Inmate/Parolee Appeal
18   Form (CDC 602), which was consolidated into Appeal One, requesting an
19   assignment to a low bunk.  (*Id.* at 7).  Plaintiff claimed that he fell down a
20   flight of iron stairs on August 27, 2006, and blamed his arthritis and
21   reassignment to a top tier for his fall.  (*Id.*).  Additionally, Plaintiff
22   requested to be seen by a "real doctor."  (*Id.* at 15).  Plaintiff also made the
23   following statement in his appeal: "Ms. Thomas does not like me and she
24   refused to see me for 26 days until the appeals coordinator Ms. Edwards
25   spoke to MTA Vrooman and found out what [Thomas] was doing to me
26   refusing to see me and refusing to give me pain meds."  (*Id.*) (emphasis
27   omitted).

28        On October 26, 2006, a Second Level Appeal Response was issued.

(*Id.* at 8).  The decision extended Plaintiff's lower bunk chrono through October 31, 2006, and denied his request to be moved to a specific prison housing facility.  (*Id.*).  The decision did not reference Defendants Vrooman or Sepulveda.  (*See id.* at 8–9).

Plaintiff appealed, and a Director's Level Appeal Decision was rendered on January 18, 2007, denying the appeal.  (*Id.* at 5).  The decision stated that Bryant had been evaluated by an orthopedist, was receiving ongoing medical care, and was at the time housed in low bunk/low tier.  (*Id.*).  The decision advised Plaintiff that he was provided "reasonable accommodation for his mobility and health concerns," and that "staff acted appropriately."  (*Id.*).  There was no mention of Vrooman or Sepulveda in the Director's Appeal Decision.  (*See id.*).

Plaintiff filed another appeal, Appeal Two, which was exhausted on June 14, 2007.  (ECF No. 133–2 at 48–51).  In his appeal, Plaintiff claimed that he was "mobility and vision impaired," and requested to be issued a Disability Placement Program Verification Form permanently documenting his disabilities.  (*Id.* at 52).  Additionally, Plaintiff requested to be personally interviewed.  (*Id.*).

On September 19, 2006, FNP Thomas interviewed Plaintiff.  (*Id.* at 61).  The First Formal Level Response was rendered on September 21, 2006, and stated that Plaintiff did not meet the Americans with Disabilities (ADA) criteria for the Disability Placement Program due to vision and/or mobility impairment.  (*Id.*).  The decision cited a recent optometry exam that established that Bryant's vision was correctable to 20/20, and radiological studies of Plaintiff's knees, feet and spine, which were within the norm.  (*Id.*).

On September 22, 2006, Appeals Coordinator Edwards interviewed Plaintiff regarding his appeals.  (*Id.* at 56).  Plaintiff asserts that he made

the following statement during the interview:

> I was being denied medical care by Thomas, Vrooman, and Sepulveda. I told [Edwards] that I fell and seriously injured myself climbing down from my upper bunk and both Vrooman and Sepulveda refused to provide me any medical care or treatment and that they refused to even allow me to come inside the clinic and that it was Thomas who was behind this. I told [Edwards] that both Vrooman and Sepulveda refused to write a[n] injury Report each of those days I fell. They were required to do this.

(ECF No. 135 at 2). Plaintiff claims that Edwards informed him that she went to the clinic and questioned Vrooman and Sepulveda about these claims. (*Id.*). In support, Plaintiff references the entries in his "personal legal and medical log book" for September 22, 2006, and September 28, 2006. (*Id.*) (citing ECF No. 135 at 7).

On September 27, 2006, Plaintiff appealed the First Level Response decision and alleged that FNP Thomas lied when she noted in Plaintiff's records that she had examined him on September 19, 2006. (ECF No. 133–2 at 58–60). Plaintiff claimed that on that date Thomas removed the neck brace Plaintiff had been previously provided, but otherwise did not examine him. (*Id.* at 60). Bryant wrote that a CDCR officer and an MTA were present during the neck brace removal, and that he was intimidated by their presence.[1] (*Id.*). Bryant also alleged that his back pain worsened after the neck brace removal, and opined that he had a spinal cord injury. (*Id.*). Bryant further claimed in his appeal that his medical records contained x–ray reports establishing that he had degeneration in his knees and spine, and arthritis. (*Id.* at 59–60).

Plaintiff's September 27, 2006, appeal also contained the following statement: "it has just recently come to my attention that [FNP Thomas] gave false information to the appeals coordinator and tried to make it

---

[1]In his original Complaint, Plaintiff named the prison officials present during the neck brace removal on September 19, 2006, as "c/o Peters and MTA Stangle." (ECF No. 1 at 2).

seem like it was MTA Vrooman and Ms. Sepulveda's fault that I was not receiving medical care." (*Id.* at 60).  Bryant requested an interview with someone other than FNP Thomas and asked for his medical records to be brought to the interview.  (*Id.* at 59–60).

The records attached to Appeal Two contain a response from the Appeals Coordinator dated September 28, 2006.  (*Id.* at 57).  The letter was addressed to Plaintiff, titled "RE: Screening at the SECOND Level," and advised Plaintiff that the enclosed documents were being returned because he was "attempting to change" his "original appeal issue."  (*Id.*). The page numbering in the appeal documents, as well as CDCR's notations stating "Screened out September 29, 2006," suggest that the screened out documents contained Plaintiff's September 27, 2006, appeal of the First Level Response decision.  (*See id.* at 58–60).  Plaintiff was advised that the screening decision was not appealable.  (*Id.* at 57).  If Plaintiff believed the decision to be erroneous, he was given an option to write an explanation and return the screening decision form, along with the supporting documents, to the Appeals Coordinator.  (*Id.*).

The records provided by Nava and Plaintiff do not contain any documents establishing that Bryant challenged the September 28, 2006, screening decision.  (*See* ECF No. 133–2).  However, Plaintiff submitted several written requests to Appeals Coordinator Edwards inquiring about the status of his September 27, 2006, appeal, the same appeal which appears to have been screened out.  (*See id.* at 64–66).  In one of his written requests to Edwards, Plaintiff speculated that CDCR staff might have lost or deliberately withheld his September 27, 2006, appeal.  (*Id.* at 65).  In another written request, Plaintiff emphasized the importance of Appeal Two and stated that the appeal needed "to be processed through all the levels of review necessary."  (*Id.* at 64).

On January 2, 2007, Plaintiff filed an Inmate/Parolee Appeal Form (CDC 602) stating that he had sent Appeal Two for Second Level Review. (*Id.* at 54). Plaintiff stated that the appeals office claimed that it had never received his appeal. (*Id.*). Bryant requested an interview regarding the appeal, as well as the copies of the appeal records and the First Level Response. (*Id.*).

Plaintiff's January 2, 2007, appeal was incorporated into Appeal Two. (*Id.*). On February 26, 2007, Plaintiff received a Second Level Appeal Response advising him that he "[did] not meet the criteria for designation [as mobility and vision impaired]." (*Id.* at 56). Additionally, the decision acknowledged an information chrono dated September 28, 2006, indicating that prison officials Edwards and McShan interviewed Plaintiff on September 22, 2006, to discuss Plaintiff's "numerous" ADA appeals. (*Id.*). Plaintiff's claim of not being able to see a doctor was refuted because Plaintiff had been seen by a primary care provider. (*Id.*). It was further noted that Plaintiff was placed on an "Appeal Abuse Warning." (*Id.*). The Second Level Appeal decision did not reference Defendants Vrooman and Sepulveda. (*See id.*).

On June 14, 2007, a Director's Level Appeal Decision[2] denied Plaintiff's request to be issued a form permanently documenting his alleged disabilities. (*Id.* at 48). The decision noted Bryant's claim that his voluminous medical history established his permanent disability, as well as the claim that FNP Thomas deliberately lied on Plaintiff's medical records when she remarked that Plaintiff did not have a permanent disability. (*Id.* at 50). The decision stated that "medical opinions,

---

[2]The original Director's Level Appeal Decision rendered on June 14, 2007, was amended on August 29, 2007. (ECF No. 133–2 at 50–51). The findings in the amended Director's Level Appeal Decision appear to be identical to the findings in the original Director's Level Appeal Decision. (*See id.* at 48–51).

diagnosis, and treatment recommendations can vary between facilities, specialists, and physicians throughout CDCR." (*Id.*).  Plaintiff was assured that he would continue receiving "all necessary health care" regardless of CDCR's classification of his medical condition.  (*Id.*).  The decision further stated that Bryant had been examined and treated by licensed physicians, and concluded that there was no reason for further intervention at the Director's Level of Review.  (*Id.*).

In response to the current action, Defendants obtained the declaration of Appeals Coordinator Porfirio Nava.  After reviewing Bryant's exhausted appeals, Appeals Coordinator Nava determined that Plaintiff did not exhaust claims that Defendants Vrooman and Sepulveda refused Plaintiff medical assistance and declined to file incident reports on August 16, 20, or 25, 2006.  (*Id.* at 3).  Nava also concluded that Plaintiff did not exhaust any appeals claiming that Defendants Vrooman and Sepulveda ignored Bryant's requests for help with his medical issues, and that Vrooman, Sepulveda, and FNP Thomas conspired to cover up any actions or failures to act in connection with Plaintiff's alleged injuries. (*Id.*).  Nava concluded that Plaintiff "did not exhaust any administrative appeals related to any complaints Bryant had regarding MTA Vrooman and RN Sepulveda during the time he was incarcerated at Calipatria...." (*Id.*).

### III. STANDARD OF REVIEW

To state a claim under Section 1983, a claimant must allege two essential elements: (1) a person acting under color of state law committed the conduct at issue, and (2) the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States.  *See* 42 U.S.C. § 1983 (1996); *Parrat v. Taylor*, 451 U.S. 527, 535 (1981) (overruled on other grounds by *Daniels v. Williams*, 471

U.S. 327, 330–31 (1986)).  A claimant's right is violated within the meaning of Section 1983 if another person "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation...." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  The analysis of the causation is individualized and focuses on the "duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Federal Rule of Civil Procedure 8(a)(2) only requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  Nevertheless, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell*, 550 U.S. at 545 (internal quotations omitted).  A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 547.  A claim is plausible on its face when a plaintiff pleads factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The courts are required to assume the truth of the presented facts and construe all inferences from facts in the light most favorable to the

nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002). Furthermore, the courts are obliged to liberally construe pleadings of *pro se* plaintiffs and to afford such plaintiffs any benefit of the doubt, particularly in civil rights cases. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992). The courts, however, need not accept as true conclusory allegations, unwarranted deductions of fact or unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

## IV. DISCUSSION

Defendants move to dismiss Plaintiff's SAC pursuant to Federal Rule of Civil Procedure 12(b), because they allege that Plaintiff failed to exhaust his administrative remedies before filing suit and alternatively failed to state a cause of action upon which relief may be granted. (ECF No. 133–1 at 1–2). Plaintiff claims that he properly exhausted his administrative remedies against Defendants Vrooman and Sepulveda. (ECF No. 135 at 1–2). Plaintiff also asserts that his complaint states a cause of action for Defendants' deliberate indifference to his serious medical needs. (ECF 135 at 1,5).

### A. Failure to Exhaust Administrative Remedies

The Ninth Circuit has articulated a general rule that "failure to exhaust nonjudicial remedies is a matter in abatement, not going to the merits of the claim," that is properly raised in a motion to dismiss, including a nonenumerated motion under a Federal Rule of Civil Procedure 12(b). *See Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368–69 (9th Cir. 1988); *see also Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) (stating that a nonenumerated motion

under Rule 12(b) is a proper pretrial motion for establishing nonexhaustion of administrative remedies under 42 U.S.C. § 1997e(a)). Nonexhaustion of administrative remedies, as set forth in 42 U.S.C § 1997e(a), is an affirmative defense. *Wyatt*, 315 F.3d at 1119. Defendant prison officials carry the burden of raising and proving the absence of exhaustion. *Id.* Plaintiff must be afforded an opportunity to develop a record to refute the defendant's showing of nonexhaustion. *See id.* at 1120 n.14.

Dismissal of the action for nonexhaustion of administrative remedies is not a decision on the merits. *Id.* (citation omitted). When deciding a motion to dismiss for failure to exhaust nonjudicial remedies, the court "may look beyond the pleadings and decide disputed issues of fact." *Id.* at 1119–20.

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust administrative remedies before filing a suit. 42 U.S.C. § 1997e(a) (2013). PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* Exhaustion is mandatory and not left to the discretion of the district court. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Plaintiff is required to comply with an agency's deadlines and procedural rules, and does not satisfy the exhaustion requirement "by filing an untimely or otherwise procedurally defective administrative grievance or appeal." *Id.* at 83–84, 90.

California inmates and parolees have the right to administratively appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as

having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (2013). Inmates must proceed through the following levels of appeal in order to exhaust administrative remedies within the prison grievance system: (1) informal resolution, (2) formal written appeal on a CDCR's Inmate/Parolee Appeal Form (CDC 602), (3) second level appeal to the institution head or designee, and (4) third level appeal to the director of CDCR. *Barry v. Ratelle*, 985 F.Supp. 1235, 1237 (S.D. Cal. 1997); *see* Cal. Code Regs. tit. 15, § 3084.7 (2013).

The third level appeal, also referred to as the "Director's Level Decision," is final and exhausts all administrative remedies available in CDCR. *See id* § 3084.7(d)(3); *Irvin v. Zamora*, 161 F.Supp. 2d 1125, 1129 (S.D. Cal. 2001). An inmate may initiate litigation in federal court "only after the administrative process ends and leaves his grievances unredressed." *Vaden v. Summerhill*, 449 F.3d 1047, 1051 (9th Cir. 2006); *see* 42 U.S.C. § 1997e(a) (2013).

A prison grievance is sufficient when it "alerts the prison to the nature of the wrong for which redress is sought." *See Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) (citing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). Prisoners filing administrative appeals are not required to allege every fact necessary to prove each element of a legal claim, as long as they provide "enough information ... to allow prison officials to take appropriate responsive measures." *Griffin*, 557 F.3d at 1120–21 (citing *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir. 2004)).

California administrative appeals must be in writing. *See* Cal. Code Regs. tit. 15, § 3084.2(a) (2013) (stating that the "appellant shall use a CDCR Form 602 ... Inmate/Parolee Appeal, to describe the specific issue under appeal and the relief requested."). Inmates are required to list all

staff members involved in the aggrieved incident and describe their involvement.  *Id*. § 3084.2(a)(3).  Administrative remedies are not exhausted "relative to any new issue, information or person later named by the appellant that was not included in the originally submitted CDCR Form 602 and addressed through all required levels of administrative review ...."  Cal. Dep't of Corrections Operations Manual, § 54100.13.3.

### 1. Claims Against Defendants Vrooman and Sepulveda

Plaintiff claims that on August 16, 20, and 25, 2006, Defendants Vrooman and Sepulveda refused Plaintiff's requests for medical assistance and admission to the prison's medical clinic.  (ECF No. 132 at 3).  Additionally, Plaintiff asserts that Defendants Vrooman and Sepulveda refused to file incident reports following Plaintiff's falls.  (*Id*.).  Bryant also claims that Defendants conspired with FNP Thomas to deny Plaintiff medication and access to medical care.  (*Id*.).

Defendants argue that Plaintiff failed to exhaust his administrative remedies and thus his SAC should be dismissed.  (ECF No. 133–1 at 1–2).  In support of their Motion, Defendants provide the sworn declaration of Porfirio Nava, the Appeals Coordinator at Calipatria.  (ECF No. 133–2 at 1–3).  Nava concluded that none of the claims against Vrooman and Sepulveda were decided at the Director's Level of review, and that Plaintiff did not exhaust any administrative appeals related to any complaints against Defendants.  (*Id*. at 3).  Plaintiff counters in his Opposition that his prison grievances, included as exhibits to Porfirio Nava's declaration, exhausted his administrative remedies.  (ECF No. 135 at 1) (citing ECF No. 133–2 at 1–3).

In his SAC, Plaintiff references two exhausted appeals to support the assertion that he properly exhausted his administrative remedies regarding his claims against Defendants Vrooman and Sepulveda.  (*See*

ECF No. 135 at 1–2).  The first appeal, Appeal One, concerned Bryant's request for a low tier/low bunk medical accommodation chrono and FNP Thomas' alleged refusal to order such a chrono.  (ECF No. 133–2 at 2). The second appeal, Appeal Two, addressed Plaintiff's request to be issued a form permanently documenting his alleged disabilities.  (*Id.*).

**a. Appeal One**

Plaintiff filed Appeal One on August 20, 2006, requesting a lower bunk/lower tier assignment in a specific prison housing facility.  (ECF No. 133–2 at 11).  Plaintiff did not mention Defendants Vrooman or Sepulveda in the form that initiated the appeal.  (*See id.*).

To support the assertion that he properly exhausted administrative remedies against Defendants Vrooman and Sepulveda, Plaintiff cites his September 5, 2006, appeal of the First Level Appeal decision.  (ECF No. 135 at 2) (citing ECF No. 133–2 at 12, 16).  In his appeal, Bryant stated the following: "[o]n 08/02/06, I was placed in a upper bunk/upper tier, and since that time I've fallen four times getting down from the upper bunk. I've reported each incident to MTA at the Clinic."  (ECF No. 133–2 at 12, 16).

Prisoners need not allege every fact in their administrative appeals, as long as they provide "enough information . . . to allow prison officials to take appropriate responsive measures."  *See Griffin v. Arpaio*, 557 F.3d 1117, 1120–21 (9th Cir. 2009) (citation omitted).  Although Bryant does not specifically name the MTA to whom he reported his injuries, presumably Plaintiff's contention is that he reported the incidents to Defendant Vrooman.

Plaintiff's statement does not contain any additional factual allegations describing Plaintiff's injuries or Vrooman's alleged refusal to allow Plaintiff admission to the clinic.  Plaintiff neither alleges that

Defendant Vrooman refused his requests for medical care, nor claims that Vrooman refused to fill out incident reports following Plaintiff's falls. Plaintiff does not allege that Defendant Vrooman conspired with FNP Thomas to deny Plaintiff medication or access to medical treatment. As to Defendant Sepulveda, there is no reference to any alleged misconduct. (*See* ECF No. 133–2, Ex. A). Accordingly, Plaintiff's September 5, 2006, appeal did not provide sufficient information about any alleged wrongdoing by either Defendants Vrooman or Sepulveda. *See* Cal. Code Regs. tit. 15, § 3084.2(a) (2013).

In an effort to establish that he properly exhausted administrative remedies, Plaintiff references the statement he made on September 24, 2006. (ECF No. 135 at 1). The referenced sentence on an Inmate/Parolee Appeal Form stated the following: "Ms. Thomas does not like me and she refused to see me for 26 days until the appeals coordinator Ms. Edwards spoke to MTA Vrooman and found out what [Thomas] was doing to me refusing to see me and refusing to give me pain meds." (ECF No. 133–2 at 15) (emphasis omitted).

This Court has already concluded in its prior Report and Recommendation that the above statement does not describe any improper conduct by Defendants Vrooman or Sepulveda, but is directed at FNP Thomas' failure to treat Plaintiff. (ECF No. 104 at 10). Although Plaintiff references Defendant Vrooman by last name, Plaintiff does not describe his falls and injuries. Nor does Plaintiff describe Defendants' refusal to treat Plaintiff after his falls, or failure to fill out an incident report. Further, there are no factual allegations in the above statement suggesting that Defendants Vrooman and Sepulveda conspired with FNP Thomas to deny Plaintiff medication or access to medical treatment. The statement references Defendants as witnesses to FNP Thomas' failure to

treat Plaintiff, but does not alert the prison officials to any alleged wrongdoing by Defendants Vrooman and Sepulveda.

Plaintiff does not allege any facts in Appeal One to support his contention that on August 16, 20, and 25, 2006, Defendants Vrooman and Sepulveda refused Plaintiff's requests for medical assistance and admission to the prison's medical clinic.  Further, Plaintiff does not allege any facts in the appeal suggesting that Defendants Vrooman and Sepulveda refused to file incident reports following Plaintiff's falls, or conspired with FNP Thomas to deny Plaintiff medication or access to medical treatment.  Therefore, Plaintiff did not properly exhaust his administrative remedies against Defendants Vrooman and Sepulveda in Appeal One.  *See* 42 U.S.C. § 1997e(a) (2013).

**b. Appeal Two**

Plaintiff claimed in Appeal Two, filed in 2006, that he was "mobility and vision impaired" and requested to be issued a form that permanently documented his disabilities.  (ECF No. 133–2 at 52).  Plaintiff did not reference any misconduct by Defendants Vrooman and Sepulveda when he initiated the appeal.  (*See id.*).  Further, the First Level Response decision, rendered on September 21, 2006, did not reference Defendants' alleged misconduct.  (*See id.* at 61).

In his Opposition, Plaintiff points to his September 27, 2006, appeal of the First Level Appeal decision.  (ECF No. 135 at 2) (citing ECF No. 133–2 at 60).  The appeal alleged the following: "it has just recently come to my attention that [FNP Thomas] gave false information to the appeals coordinator and tried to make it seem like it was MTA Vrooman and Ms. Sepulveda's fault that I was not receiving medical care."  (ECF No. 133–2 at 60).  It appears from the record that the above claim was screened out of Appeal Two.  (*See id.* at 57–60).  Furthermore, the Second and Third

Level Appeal decisions did not address Plaintiff's claims against Vrooman and Sepulveda.  (*See id.* at 50–51, 56).  Thus, the above claim was not exhausted at the Director's Level.  *See* Cal. Code Regs. tit. 15, § 3084.7(d)(3) (2013).  Even if the statement was included in Plaintiff's exhausted appeal, the statement does not allege wrongdoing by either Defendant.  (*See id.* at 60).  Rather, the statement would appear to exonerate Defendants.

Plaintiff claims in his Opposition that "corrective action was taken [on] 09/22/06."  (ECF No. 135 at 3).  On September 22, 2006, Appeals Coordinator Edwards interviewed Plaintiff.  (ECF No. 133–2 at 56).  Plaintiff appears to be suggesting that his interview with Edwards corrected any flaws in his prior appeals.

Plaintiff's alleged oral statement to Edwards referenced his falls and injuries, and allegedly named Vrooman and Sepulveda as the prison staff that had refused to provide medical care and to file an injury report. (ECF No. 135 at 2).  Nevertheless, California Code of Regulations requires that prisoner appeals be in writing.  *See* Cal. Code Regs. tit. 15, § 3084.2(a) (2013).  Bryant's appeal records do not contain the factual allegations that he allegedly asserted during the interview with Edwards. (*See* ECF No. 133–2).  Because proper exhaustion is mandatory and not left to the discretion of the court, this Court concludes that Plaintiff's alleged oral statements to Appeals Coordinator Edwards are not sufficient to exhaust his claims against Vrooman and Sepulveda.  *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

Additionally, Plaintiff provides an excerpt from his "personal legal and medical log book" attached in his Opposition.  (ECF No. 135 at 7). Plaintiff claims that Appeals Coordinator Edwards questioned Vrooman and Sepulveda about the allegations that Plaintiff had allegedly made

during the interview with Edwards, and that the entries in his "log book" corroborate his claims. (*Id.* at 2).

Plaintiff's entries in his "log book" are not part of his official appeal records. (*See* ECF No. 133–2). Such entries were not addressed through the required levels of administrative review within the prison grievance system. *See* Cal. Code Regs. tit. 15, § 3084.7 (2013). Consequently, Plaintiff entries in his "log book" have no bearing on whether Plaintiff exhausted administrative remedies against Defendants Vrooman and Sepulveda.

Neither Plaintiff's oral statements to Edwards on September 22, 2006, nor Plaintiff's entries in his personal "log book" establish proper exhaustion of administrative remedies against Defendants. *See id.* §§ 3084.2(a), 3084.7. Plaintiff does not allege any facts in Appeal Two that on August 16, 20, and 25, 2006, Defendants Vrooman and Sepulveda refused Plaintiff's requests for medical assistance and admission to the prison clinic. Further, Plaintiff did not allege in Appeal Two that Defendants refused to file incident reports following Plaintiff's falls, or conspired with FNP Thomas to deny Plaintiff medication or access to medical treatment. Therefore, Appeal Two did not properly exhaust Plaintiff's administrative remedies against Defendants Vrooman and Sepulveda. *See id.* § 3084.7.

## 2. Conclusion

Plaintiff claims that his prison grievances included as exhibits to Nava's declaration exhausted his administrative remedies. (ECF No. 135 at 1) (citing ECF 133–2). However, none of the appeals decided at the Director's Level contain factual allegations that on August 16, 20, and 25, 2006, Defendants Vrooman and Sepulveda refused Plaintiff's requests for medical assistance and admission to the prison's medical clinic. None of

the appeals contain Plaintiff's claims that Defendants Vrooman and Sepulveda refused to file incident reports following Plaintiff's falls, or claims that Defendants conspired with FNP Thomas to deny Plaintiff medication or access to medical treatment.

Thus, Plaintiff's exhibits confirm Appeals Coordinator Nava's sworn declaration. Defendants have established that Plaintiff failed to exhaust his administrative remedies with regard to all claims against Defendants Vrooman and Sepulveda. Defendants have met their burden of raising and proving the absence of exhaustion. *See Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). Because Plaintiff's claims are not exhausted as required by 42 U.S.C. § 1997e(a), they are not properly before the Court. *See* 42 U.S.C. § 1997e(a) (2013). Accordingly, the Court **RECOMMENDS** that Plaintiffs's claims against Defendants Vrooman and Sepulveda be **DISMISSED**.

Dismissal with prejudice is appropriate when a plaintiff repeatedly fails to cure deficiencies in his pleading and when further amendment is futile. *See Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (upholding the district court's decision to dismiss with prejudice when plaintiff repeatedly failed to cure the deficiencies in his pleadings); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (*citing* Fed. R. Civ. P. 15(a)) (stating that "repeated failure to cure deficiencies by amendments previously allowed" and "futility of amendment" are factors justifying refusal of leave to amend). This is Plaintiff's Second Amended Complaint, and Plaintiff has had several opportunities to establish proper exhaustion of his administrative remedies with regard to all claims against Defendants Vrooman and Sepulveda. (ECF No. 132). Plaintiff was aware of the deficiencies in his claims (*see* ECF No. 106 at 4), yet failed to provide evidence to establish exhaustion. (*See* ECF Nos. 132, 135). While

the Court is mindful that a *pro se* Plaintiff should be given every opportunity to amend his Complaint, in light of Plaintiff's repeated failures to cure its deficiencies, and because further amendment of the complaint would be futile, the Court **RECOMMENDS** that Plaintiff's claims against Vrooman and Sepulveda be **DISMISSED WITH PREJUDICE.**

### B. Failure to State a Claim

Defendants move to dismiss Plaintiff's SAC pursuant to Rule 12(b)(6) on the ground that the complaint fails to state a cause of action against them. (ECF No. 133–1 at 2). Plaintiff asserts that his complaint states a cause of action for Defendants' deliberate indifference to his serious medical needs. (ECF No. 135 at 1, 5). Because the Court concludes that the claims against Vrooman and Sepulveda are not properly exhausted, the Court need not address Plaintiff"s Eighth Amendment Claims.

### V. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's claims against Defendants Vrooman and Sepulveda be **DISMISSED WITH PREJUDICE** for failure to exhaust administrative remedies.

**IT IS ORDERED THAT:**

This Report and Recommendation will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) (2009).

Any party may file written objections to this Report and serve a copy on all parties by January 28, 2014. The document shall be captioned "Objections to Report and Recommendation." Any reply to the objection shall be served on all parties and filed with the Court by February 11, 2014. The parties are advised that the failure to file objections within the

specified time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**


DATED:  January 7, 2014


Hon. Mitchell D. Dembin
U.S. Magistrate Judge